UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
POWER PLAY 1 LLC, *et ano.*,

                        Plaintiffs,

      -against-

NORFOLK TIDE BASEBALL CLUB, LLC, *et al.*,

                        Defendants.
---------------------------------------------------------------

17cv4831

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

      Defendants Norfolk Tide Baseball Club, LLC ("Norfolk Tide") and Tides Baseball Club L.P. ("Tides," and together with Norfolk Tide, the "Tides Defendants") move to dismiss this action under Rule 12(b)(3) for improper venue, or alternatively, to transfer this action to the U.S. District Court for the Eastern District of Virginia. For the reasons that follow, the Tides Defendants' motion to dismiss for improper venue is denied and the motion to transfer this action to the Eastern District of Virginia is granted.

## BACKGROUND

      This Court briefly revisits the underlying facts relevant to the instant motions.[1] On September 30, 2016, Power Play 1 LLC ("Power Play") purchased Norfolk Tide's ownership interest in Admirals ECHL Hockey LLC ("Admirals ECHL"), an operating company that managed a Virginia-based minor league professional hockey team. Power Play's purchase of Admirals ECHL was effectuated by a Membership Interest Purchase Agreement (the "Agreement") between Power Play and Norfolk Tide. According to Power Play, however, the

---

[1]     For factual background, this Court assumes familiarity with its prior Opinion & Order. See Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC, 2017 WL 5312193 (S.D.N.Y. Nov. 13, 2017).

Tides Defendants fraudulently induced it into entering the Agreement by failing to disclose certain Admirals ECHL contract obligations. The <u>coup de grâce</u> was that Norfolk Tide also purportedly concealed the fact that Norfolk Tide never existed, and as such, did not even own any transferable obligations or interest in Admirals ECHL. Finally, Power Play avers that the Tides Defendants converted Admirals ECHL monies as well as hockey team merchandise and memorabilia.

After discovering these misrepresentations and omissions, Power Play demanded indemnification pursuant to the Agreement. (First Amended Complaint, ECF No. 31 ("Compl.") ¶¶ 23-24 & Ex. 2.) Following several exchanges between the parties, Power Play's counsel informed counsel for the Tides Defendants on May 12, 2017 that Power Play intended to file suit unless it received a settlement offer from the Tides Defendants by May 18, 2017. (Declaration of Thomas T. Reith, ECF No. 50 ("Reith Decl."), Ex. 1.) On May 18, 2017, counsel for the Tides Defendants made a settlement offer and suggested the parties mediate the dispute. (Reith Decl., Ex. 1.) Four days later, Power Play rejected the settlement offer as well as mediation. (Reith Decl., Ex. 1.) In that correspondence, Power Play's counsel asked whether counsel for the Tides Defendants was authorized to accept service. (Reith Decl., Ex. 1.)

On May 23, 2017, the Tides Defendants commenced a declaratory judgment action against Power Play and Admirals ECHL in the Eastern District of Virginia (the "Virginia Action"). (Declaration of R. Johan Conrod, Jr., ECF No. 38 ("Conrod Decl."), Ex. 1.) On June 14, 2017, Power Play sought and received an extension of time until June 28, 2017 to respond to the complaint in the Virginia Action. (Conrod Decl., Ex. 1.) Power Play and Admirals ECHL brought the instant action against the Tides Defendants for rescission, damages, and declaratory relief on June 27, 2017—one day before its deadline to respond in the Virginia Action.

DISCUSSION

I.  Motion to Dismiss

   A. Whether Venue Is Proper

As a threshold matter, the Tides Defendants do not appear to dispute that this action is properly venued in the Southern District of New York. This Court concludes the same. Whether venue is proper is determined solely by reference to the applicable federal statutory venue provisions, regardless of whether a forum selection clause exists. Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 577-78 (2013). In relevant part, venue may be proper under 28 U.S.C. § 1391(b) in the judicial district in which each defendant resides, if all defendants are residents of the State in which the district is located. An entity defendant is deemed to reside for venue purposes in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c).

Here, venue is proper in the Southern District of New York based on the Agreement, under which each party "irrevocably submit[ted] to the exclusive jurisdiction" of the United States federal courts and the courts of the State of New York for actions arising out of or based upon the Agreement.[2] (Compl., Ex. 1 ("Agreement") § 7.12.) Because the Tides Defendants are subject to this Court's personal jurisdiction, see Coface v. Optique Du Monde, Ltd., 521 F. Supp. 500, 506 (S.D.N.Y. 1980), venue is proper in the Southern District of New York under § 1391(b). As such, the Tides Defendants' motion to dismiss this action for

---

[2] To be sure, the validity of the Agreement is at issue in this action. However, the fact that Power Play alleges fraud in the inducement of the Agreement—as opposed to alleging specifically that the inclusion of § 7.12 was procured by fraud—is insufficient to defeat that provision's applicability or validity. See, e.g., BMR & Assocs., LLP v. SFW Capital Partners, LLC, 92 F. Supp. 3d 128, 137 (S.D.N.Y. 2015); see also Thibodeau v. Pinnacle FX Investments, 2008 WL 4849957, at *6-8 (E.D.N.Y. Nov. 6, 2008) (collecting cases). Absent any showing that § 7.12 itself was induced by fraud, this Court concludes that it applies.

improper venue under Rule 12(b)(3) is denied. See Atl. Marine, 124 S. Ct. at 577 (explaining that Rule 12(b)(3) allows dismissal "only when venue is 'wrong' or 'improper'").

B. First-Filed Presumption

Defendants also seek to dismiss this action in favor of the earlier-filed Virginia Action under the first-filed presumption, which provides that when lawsuits with the same parties and issues are pending in two federal districts, the first-filed suit generally has priority. Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995); see N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010). Although there is a "strong presumption" in favor of the first-filed suit, Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001), this presumption is not to be applied rigidly or mechanically simply based on the dates the actions were filed, Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014); see Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (explaining that the "first-filed rule" is not an "invariable mandate," but a rebuttable presumption). Accordingly, the Second Circuit has recognized that the first-filed presumption is inapplicable in only two scenarios: (1) if the balance of convenience weighs in favor of the second action, or (2) if special circumstances justify giving priority to the second action. N.Y. Marine & Gen. Ins. Co., 599 F.3d at 112.

Although the special circumstances that warrant deviation from the first-file presumption are rare, Emp'rs Ins. of Wausau, 522 F.3d at 275, one such circumstance exists when the first-filed suit is an improper anticipatory filing. Ontel Prods., 899 F. Supp. at 1150. An improper anticipatory filing is one "made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district." Ontel Prods., 899 F. Supp. at 1150. While declaratory judgments are often anticipatory by definition, the "mere fact that an

action is brought as one for a declaratory judgment 'does not necessarily [mean that it] constitute[s] an anticipatory filing for the purposes of an exception to the first filed rule.'" Ontel Prods., 899 F. Supp. at 1150 (alterations in original). Instead, "for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warning as to deadlines and subsequent legal action." Emp'rs Ins. of Wausau, 522 F.3d at 276. Thus, while a declaratory judgment action that is prompted by receipt of a notice letter is routinely a litmus test for anticipatory conduct, Chicago Ins. Co. v. Holzer, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000), pre-suit correspondence that merely seeks information or settlement negotiations without "indicia of impending litigation" is insufficient, Cephalon, Inc. v. Travelers Cos., Inc., 935 F. Supp. 2d 609, 614 (S.D.N.Y. 2013). Finally, an anticipatory filing is "improper" when it "attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." Ontel Prods., 899 F. Supp. at 1150.

Before addressing Power Play's contention that the Virginia Action constitutes an improper anticipatory filing, this Court notes that judges in this District have generally adhered to the principle that the court before which the first-filed action was brought should decide whether the first-filed presumption or an exception applies. Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 510 (S.D.N.Y. 2004). This decision rule is concerned with avoiding "the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort." Donaldson, Lufkin & Jenrette, Inc. v. L.A. Cty., 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982). But this case presents unique circumstances justifying departure from the rule. Although the Virginia Action was filed first, the district judge in that action held Power Play and Admirals ECHL's motions to dismiss, stay, or transfer the Virginia Action in abeyance pending

the disposition of the instant motion. (See Conrod Decl., Ex. 1.) Consequently, the underlying concerns of judicial economy and comity are not implicated by this Court's determination of whether the first-filed presumption applies.

Applying these principles to this case, this Court infers that the Virginia Action is an improper anticipatory filing by the Tides Defendants. The chronology presented by Power Play reveals that counsel for Power Play explicitly relayed its intention to file suit if it did not receive a settlement offer by May 18, 2017. See Cephalon, Inc., 935 F. Supp. 2d at 614 (explaining that when a notice letter informs the defendant of the intention to file suit, a filing date, or a specific forum, courts have found in favor of the second-filed action). Subsequently, the Tides Defendants timely provided a settlement offer—and notably, also reiterated its desire to "resolve this matter out of court if possible," including through mediation. But they immediately reversed course, filing the Virginia Action one day after receiving Power Play's May 22, 2017 rejection of the settlement offer and mediation. Moreover, filing the Virginia Action on the heels of Power Play's request to confirm whether counsel for the Tides Defendants could accept service persuades this Court that the Tides Defendants believed that Power Play would imminently file suit. Cf. AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 470 (S.D.N.Y. 2010) ("A gauge for measuring the effect of a notice-for-suit letter is how clearly the party . . . demonstrates its intention and resolve to file suit."). The fact that the Virginia Action is essentially a mirror-image of this lawsuit also supports this Court's conclusion that the Tides Defendants filed that action to preempt an action by Power Play in its chosen forum. Indeed, in the Virginia Action—which merely inverts the posture of the parties in this action—Tides seeks a declaration that it did not breach the Agreement by failing to disclose certain Admirals ECHL contracts in the Agreement's schedules and that Power Play did not

reasonably rely on any alleged misrepresentations by Tides. (See Declaration of Ardon Wiener, ECF No. 47 ("Wiener Decl."), Ex. 4 ("Virginia Action Compl.") ¶¶ 19-23.)

C. Forum-Selection Clause

The Tides Defendants also contend that § 7.12 compels dismissal because the parties agreed to be sued in the Eastern District of Virginia by "irrevocably" submitting to the jurisdiction of the federal courts of the United States, which includes that judicial district. In relevant part, § 7.12 provides that any "legal suit, action or proceeding" arising out of or based upon the Agreement "may be instituted in the federal courts of the United States of America or the courts of the State of New York in each," and that "each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." (Agreement § 7.12 (emphasis added).)

The fact that the Eastern District of Virginia is a proper forum for one action does not mean that the Southern District of New York—or any other contractually specified forum—is improper for another action. Instead, § 7.12 by its plain language allows either party to file an applicable action in a federal court or New York state court, and—if an action should be filed in a federal court or New York state court—obligates the parties to the exclusive jurisdiction of those courts for that action. Cf. AGR Financial, L.L.C. v. Ready Staffing, Inc., 99 F. Supp. 2d 399, 402-03 (S.D.N.Y. 2000). Such an interpretation does not mean that once a party files an applicable action in a forum specified by § 7.12, the parties must litigate all future actions in that forum. Nor would it prohibit a party from interposing jurisdictional or venue objections in an action that is not filed in federal court or New York state court.

Thus, it follows that Power Play's irrevocable submission to the jurisdiction of the Eastern District of Virginia court for the Virginia Action says nothing about the status of its

7

consent to the jurisdiction of this Court for this action. Moreover, the Tides Defendants joust with windmills by asserting that Power Play's irrevocable submission to jurisdiction precludes it from avoiding the Eastern District of Virginia because Power Play never contends that that forum is improper. In sum, § 7.12 is neutral because actions arising out of the Agreement may be brought in either forum.[3]

II. Motion to Transfer

Even though this Court concludes that the first-filed presumption is inapplicable, it also considers whether to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404.[4] Under that provision, a court may transfer any civil action to any other district where venue is proper or to any district to which all parties have consented "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); see Atl. Marine, 134 S. Ct. at 579. The party seeking transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010). In other words, the movant must make "a strong showing that the balance of convenience and interest of justice weigh heavily in favor of transfer." U.S. Commodity Futures Trading Comm'n v. Wilson, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014) (quotation marks omitted).

---

[3] The Tides Defendants' remaining arguments on this score lack merit. For example, they suggest that this Court should dismiss this action in favor of the Virginia Action solely based on the proximity of the Virginia courthouse to the Norfolk Admirals' home ice. But this argument has no basis in law, and such an arbitrary rule would hardly be judicially administrable.

[4] While the Tides Defendants also base their motion to transfer on forum non conveniens, that doctrine is inapplicable here. See, e.g., Siegel v. Ford, 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017) (noting that § 1404(a) "displaced 'the common law doctrine of forum non conveniens for transfers between United States district courts'"); see also Atl. Marine, 134 S. Ct. at 580 (describing forum non conveniens as a "residual doctrine" that continues to apply when the transferee forum is a state or foreign court).

In resolving a § 1404 motion, the court must first determine whether venue is proper in the proposed transferee district. See Solar v. Annetts, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010). If venue is proper, a court then considers whether the transfer is an appropriate exercise of its discretion by weighing the following non-exhaustive factors: (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight to be accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. Solar, 707 F. Supp. 2d at 442. There is "no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Instead, in light of a district court's "broad discretion" in deciding whether to transfer venue, it "must make [its] determination[] 'upon notions of convenience and fairness on a case-by-case basis.'" Citicorp Leasing, Inc. v. United Am. Funding, Inc., 2004 WL 102761, at *2 (S.D.N.Y. Jan. 21, 2004). In considering these factors, the court may consider factual material outside the pleadings. Mohsen v. Morgan Stanley & Co., 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013); see Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (reiterating that the movant's application must be supported with "an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision]" (alteration in original)).

Here, Power Play does not dispute that venue is proper in the Eastern District of Virginia. In fact, Power Play offers no response to the Tides Defendants' arguments for the § 1404 factors. In re Jumei Int'l Holding Ltd. Sec. Litig., 2017 WL 95176, at *5 n.4 (S.D.N.Y.

9

Jan. 10, 2017) (arguments not addressed in opposition brief are deemed conceded). Because this Court concludes that the locus of operative facts and the interest of justice weigh strongly in favor of transfer, this action will be transferred to the Eastern District of Virginia.

  A. Convenience of the Witnesses

In considering the convenience of the witnesses, a court "must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Liberty Mut. Ins. Co., 17 F. Supp. 3d at 396. To that end, a party seeking transfer based on the convenience of the witnesses "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Liberty Mut. Ins. Co., 17 F. Supp. 3d at 96 (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), overruled on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990)). Nonetheless, such a specific showing is "required only when the movant seeks a transfer solely 'on account of the convenience of witnesses,'" and when a party seeks transfer "'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." Mohsen, 2013 WL 5312525, at *8 n.7 (citing Connors v. Lexington Ins. Co., 666 F. Supp. 434, 455 (E.D.N.Y. 1987)); see also Larew v. Larew, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012) (noting that while "a more elaborate statement of probable testimony" is preferable, "a very general indication of [the witnesses'] role in the transaction at issue, and thus, by implication, of their testimony" is sufficient) (quotation marks and citation omitted, alteration in original).

Here, the Tides Defendants attest generally that the witnesses who were involved with Admirals ECHL's management before the sale to Power Play and the witnesses associated with any third-party vendors are based in Virginia. (Declaration of Joseph Gregory, ECF No. 39 ("Gregory Decl.") ¶¶ 1, 13.) Although the number of witnesses on each side is not by itself

dispositive, the location of the non-party vendor witnesses weighs in favor of transfer. See Tlapanco v. Elges, 207 F. Supp. 3d 324, 329 (S.D.N.Y. 2016) (noting that "the convenience of non-party witnesses is accorded more weight than that of party witnesses").

Nonetheless, the weight of this factor is tempered by the Tides Defendants' failure to provide further information that would allow this Court to ascertain the "materiality, nature, and quality" of that testimony. Liberty Mut. Ins. Co., 17 F. Supp. 3d at 396. Indeed, courts must "qualitatively evaluate the materiality" of the potential testimony, and only "material witnesses are afforded substantial weight in the balancing calculus." Ivy Society Sports Grp., LLC v. Baloncesto Superior Nacional, 2009 WL 2252116, at *4 (S.D.N.Y. July 28, 2009) (citations omitted). Given the primacy to this action of the alleged omissions and misrepresentations made during the negotiation of the Agreement and in the Agreement's representations and warranties, witnesses involved with those events would be essential. This Court gleans from the factual record that the key witnesses will likely be Power Play's New York–based principals on one hand, and Admirals ECHL's and the Tides Defendants' Virginia-based principals on the other. (See Wiener Decl. ¶¶ 4-5; Gregory Decl. ¶¶ 1, 6, 12-13.) Thus, this factor weighs only slightly in favor of transfer.

   B. Location of Relevant Documents

The Tides Defendants offer the blanket assertion that most of the evidence and documentation surrounding the undisclosed contracts are located in Virginia. But they do not specify the scope or nature of this evidence, or any particular burden that would be imposed on it absent a transfer. Indeed, courts in this District have found bare statements that the relevant documents are located in defendant's home forum to be insufficient to favor transfer. See, e.g.,

IKB Int'l S.A. v. Wilmington Trust Co., 2017 WL 4084052, at *6 (S.D.N.Y. Sept. 14, 2017); Kiss My Face Corp. v. Bunting, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003).

Moreover, Power Play claims that the due diligence materials provided by the Tides Defendants are in fact located in New York. (Wiener Decl. ¶¶ 4-5.) To the extent that access to documents would be burdensome, transferring this action to the Eastern District of Virginia "would only serve to shift the burden of access," which does not favor transfer. Schnabel, 322 F. Supp. 2d at 518. Finally, this Court observes the conveniences afforded by the Internet and electronic discovery mitigate whatever burden would ordinarily be imposed on the Tides Defendants from litigating in another state. See Pence v. Gee Grp., 236 F. Supp. 3d 843, 857 (S.D.N.Y. 2017) (noting the reduced importance of this factor in light of "electronic documents, easy copying and overnight shipping"). Accordingly, this factor is neutral.

  C. Convenience of the Parties

The convenience of the parties weighs in favor of transfer when it would increase convenience for the movant without decreasing convenience for the non-movant. Liberty Mut. Ins. Co., 17 F. Supp. 3d at 399. However, it "does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff." Kiss My Face Corp., 2003 WL 22244587, at *3. In considering this factor, courts "often look to the parties' principal places of business and the location of their offices." Royal & Sun Alliance Ins., PLC v. Nippon Express, USA, Inc., 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016).

Transferring this action to the Eastern District of Virginia would certainly increase convenience for the Tides Defendants, who are either based in or citizens of Virginia. (See Compl. ¶ 4.) As for their adversaries, Admirals ECHL maintains its main office and principal place of business in Norfolk, Virginia. (Compl. ¶ 3.) While transfer may well be more

convenient for Admirals ECHL, it would decrease the convenience for Power Play, whose main office and principal place of business in the Southern District of New York and whose officers are located in New York. (Compl. ¶¶ 2-3; Wiener Decl. ¶ 4.) Thus, this factor weighs slightly in favor of transfer.

### D. Locus of Operative Facts

In determining the locus of operative facts for a breach of contract claim, a court typically considers "the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." See, e.g., IKB Int'l S.A., 2017 WL 4084052, at *3. Courts in this Circuit have held that the locus of operative facts for conversion claims "lies [in] the district where the alleged . . . conversion occurred." Khankhanian v. Khanian, 2017 WL 1314124, at *5 (S.D.N.Y. Apr. 6, 2017).

Here, Power Play affirms that it conducted negotiations from New York, (see Wiener Decl. ¶¶ 4c-4e), and this Court gathers from the Tides Defendants' submissions that they negotiated from Virginia. (See Gregory Decl. ¶¶ 1, 6, 12.) However, the alleged breach of contract concerns the misrepresentations and omissions regarding certain Admirals ECHL contracts and the true identity of Power Play's counterparty to the Agreement made during pre-closing negotiations and in the Agreement's representations and warranties. These misrepresentations and omissions were made by the Tides Defendants, who are located in Virginia. Cf. In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (misrepresentations and omissions in securities fraud action are deemed to occur where transmitted or withheld, not where they are received). The fact that the effects of the breach may be felt by Power Play in New York does not shift the location of the breach. See Ivy Society Sports Grp., LLC, 2009 WL 2252116, at *7. Additionally, the Tides Defendants attest that the

13

vendors to whom the obligations underpinning this action are owed are located in Virginia, (Gregory Decl. ¶ 13), and as far as this Court can ascertain, at least some of the undisclosed contracts resulted in litigation brought against Admirals ECHL in Virginia state court, (Compl. ¶ 20.)  Finally, the alleged conversion occurred in Virginia, where the Tides Defendants purportedly entered the hockey team's facility to remove merchandise and memorabilia to which Power Play claims it was entitled.  (See Compl. ¶ 21.)  To be sure, some of the operative facts in this action occurred in New York.  But because the vast majority occurred in Virginia, this factor weighs heavily in favor of transfer.

    E.   Weight Accorded to Plaintiff's Choice of Forum

A plaintiff's choice of forum "is given significant weight and will not be disturbed, unless the balance of factors weigh[s] strongly in favor of granting the transfer."  800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 135 (S.D.N.Y. 1994).  The chosen forum is given less weight, however, "where the case's operative facts have little in connection with the chosen forum."[5]  800-Flowers, Inc., 860 F. Supp. at 135.  Here, although Power Play's choice of its own forum deserves deference, the fact that the majority of the operative facts occurred in Virginia undermines this presumption.  This Court also observes that—notwithstanding its conclusion that the Virginia Action was an improper anticipatory filing—Power Play waited over one month to commence this action after being sued in the

---

[5]    The Tide Defendants maintain that Power Play's choice of forum does not deserve great weight because the Virginia Action was filed first, and because Power Play had contractually submitted to the jurisdiction of the Eastern District of Virginia.  Neither contention is availing.  As discussed, the first-filed presumption does not apply.  The Tides Defendants' second argument is similarly unpersuasive because it elides § 7.12's unambiguous designation of all federal courts as proper potential fora.  And while Atlantic Marine holds that "the presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis" by giving "the plaintiff's choice of forum . . . no weight," the next sentence makes clear that this adjustment presupposes that the plaintiff is "defying the forum-selection clause."  Atl. Marine, 134 S. Ct. at 581.

Eastern District of Virginia. And it only filed this action after it sought and received an adjournment of time in the Virginia Action to respond to that complaint.

F. Remaining Factors

The Tides Defendants do not argue that the availability of process, the relative means of the parties, the forum's familiarity with the governing law, or trial efficiency and the interests of justice have any bearing on the analysis. Because neither party has demonstrated any financial burden in litigating in either forum, this factor is neutral. See MasterCard Int'l, Inc. v. Lexcel Solutions, Inc., 2004 WL 1368299, at *7 (S.D.N.Y. June 16, 2004) ("'A party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.'"). Similarly, because there is no indication that any witness "will be unwilling to testify voluntarily," this Court agrees that this factor is irrelevant. Rosen v. Ritz-Carlton Hotel Co. LLC, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015). And although the Agreement mandates that New York law governs, Power Play's breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraud and misrepresentation claims are not novel or complex. Accord Khankhanian, 2017 WL 1314124, at *7 (noting that the importance of this factor is diminished when state law claims "involve only 'common causes of action'"). In any event, a Virginia federal court is capable of applying New York substantive law, especially in a straightforward tort and breach of contract action. See Flowserve Corp. v. BMCE, Inc., 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006). Moreover, a Virginia court would hardly be ill-equipped to adjudicate Power Play's declaratory judgment claim, especially in light of the fact that such a claim involving the parties is already pending in the Virginia Action. Thus, the forum's familiarity with the governing law weighs only slightly against transfer.

On the other hand, trial efficiency and the interests of justice weigh in favor of transfer. Here, this Court's familiarity with the facts of this action is limited to its resolution of Power Play's motion to disqualify counsel and the Tides Defendants' motion to dismiss or transfer this case. There is no concern that the Eastern District of Virginia would need to familiarize itself with new facts given the doppelgänger action pending before that court. Rosen, 2015 WL 64736, at *5 (explaining that "the usual concern that transferring a case would undermine judicial economy" is "because it would require a new court to familiarize itself with the facts of the case"). Finally, because the Eastern District of Virginia is the "natural focus" of the litigation, a transfer would further the interests of justice. See Delarosa v. Holiday Inn, 2000 WL 648615, at *5 (S.D.N.Y. May 19, 2000).

## CONCLUSION

For the foregoing reasons, the Tides Defendants' motion to dismiss for improper venue is denied, and the Tides Defendants' motion to transfer is granted. The Clerk of Court is directed to terminate the motions pending at ECF No. 36 and transfer this case to the United States District Court for the Eastern District of Virginia.

Dated: January 9, 2018
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.